HASS *v.* HASS.

1. DIVORCE—CONSPIRACY TO DEFRAUD WIFE OF PROPERTY RIGHTS.
   In a suit by a wife supplemental to a suit for divorce to
   set aside the transfer by her husband to his brothers of
   certain real and personal property as fraudulent, the find-
   ing of the court below of the existence of a conspiracy
   to defraud plaintiff of her rights in said property, *held,*
   justified by the record.

2. SAME—SETTING ASIDE TRANSFER OF LAND — MODIFICATION OF
   DECREE.
   On appeal from a decree setting aside a transfer of a con-
   tract interest in land by defendant husband to his brother
   as in fraud of the wife's rights, where it appears that the
   brother has paid the balance due on the contract, the wife
   is required, as a condition to affirmance, to repay to the
   brother the money he has paid thereon with interest,
   within a definite time.

Appeal from Washtenaw; Sample (George W.), J.
Submitted February 19, 1927.    (Docket No. 175.)
Decided April 1, 1927.

Supplemental bill by Christina Hass against Julius
Hass, Charles Hass and Anthony Hass for a divorce
from defendant Julius Hass, and to set aside as fraudu-
lent the transfer of certain property since the filing of
the original bill.    From a decree for plaintiff, defend-
ants Charles and Anthony Hass appeal.    Modified and
affirmed.

*Jones & Stuhrberg,* for plaintiff.

*Carl A. Lehman,* for appellants.

SNOW, J.    A decree of divorce was granted the
plaintiff in September, 1921.    About a month later

---

[1]Divorce, 19 C. J. § 737; [2]Id., 19 C. J. § 734 (Anno).

Judge Sample, upon his own motion, set the same aside, saying in his order:

"The whole decree is unsatisfactory to me, and I am convinced under it the defendant is allowed to practically escape the support of his children and his said wife."

In July, 1923, the plaintiff filed a supplemental bill of complaint, in which she charges that her husband and his two brothers, Charles and Anthony Hass, conspired together to defraud her of her rights in the personal property, and in real estate in which she and her husband had an interest when she commenced her divorce proceedings. The two brothers were made defendants, appeared, and defended upon the trial. Her husband, Julius, permitted his default to be entered and made no attempt to defend. From a decree granting relief to plaintiff, all defendants, excepting Julius, have appealed.

The original bill of complaint was filed June 27, 1921. More than a year prior to that time, to wit, March 27, 1920, Mr. and Mrs. Hass purchased on contract for $3,200 a 22-acre parcel of land in Saline township, Washtenaw county, onto which they moved from Detroit, and there took up their residence and made their home. One thousand dollars was paid on the date of the contract, and the balance was to be made in installments, the last one falling due April 1, 1925.

Upon this farm they were living when the case was begun. They then had fairly good household furniture, and considerable personal property consisting of stock and farming implements. They also had a small equity in another parcel of land of nine acres in the same township.

The brothers Charles and Anthony claim that practically all of this property belonged to them, or at least was purchased with money furnished by them.

Charles claims he gave Julius the $1,000 for the initial payment on the homestead and loaned him the money to stock and equip the farm, while Anthony claims he bought the nine acres from Julius and his wife about a month before the bill for divorce was filed, and paid to various persons, for their benefit, $400. With respect to the claim of Anthony, it appears that very soon after the case was commenced, to wit, July 28, 1921, Mrs. Hass was induced by her husband and Anthony to assign and sell to the latter their interest in this land. It is apparent that she did not realize just what she was doing, and $200, which she claims she was to receive personally, has never been paid her. Then on August 31, 1921, Charles obtained an assignment of the homestead contract, which he claims was for the $1,000 he had loaned Julius with which to make the initial payment. This assignment was not signed by the plaintiff, and she knew nothing about it. It was signed by Julius alone. The evidence is satisfactory that the personal property on the farm and most of the household goods were sold by Charles, and under one pretext or another the proceeds converted by him.

By the time plaintiff had been granted her first decree there was nothing left for her or the children or for their support. Julius defaulted in his alimony payments. Becoming convinced that an injustice had been done, the trial judge, upon his own motion, set aside the decree, and the case remained in that stage until the supplemental bill was filed nearly two years later. Why the delay does not appear. But at the close of the final hearing, the court, being of the opinion that the three brothers, acting collusively to defraud plaintiff and prevent her from obtaining any part of the real or personal property (and that they had thus far accomplished their purpose) decreed the assignments of the land contracts to them as void, substituted

plaintiff to all the rights she had thereunder on the 27th day of June, 1921, the date of filing the original bill of complaint, and ordered payment by Charles of a sum equivalent to a portion of the personal property. Plaintiff was also given an absolute divorce, custody of children, $12 per week for their support, and opportunity to pay the amount due on the homestead contract, and upon so doing to become the sole owner thereof.

This was a sweeping decree in favor of the plaintiff, but, from a careful examination of the record, we think it was fully justified by the proofs. The children are 7 in number, and 4 of them were under 14 when the separation of their parents occurred. It does not appear that they or the plaintiff have been given any aid by the defendant. The activity of his brothers in the property affairs immediately after the bill was filed, in getting it all, both real and personal, in their own hands, and this by and with the aid of defendant, might well lead one, as it did Judge Sample, to a conviction that there existed a conspiracy to defraud plaintiff of any rights she might have in the property. The trial judge had the opportunity of first hand contact with the parties and was in position to judge from their testimony and their conduct and appearance the *bona fides* of the transactions, and we are not inclined to disturb his findings.

Whatever the effect of the failure of plaintiff to sign the assignment of the homestead contract to Charles may be, the court was fully authorized, and possessed the power, to declare the assignment void and of no effect. All of the parties were before him as litigants; he had jurisdiction of the parties and of the subject-matter, and he was of the belief that the assignment was fraudulent and in furtherance of a conspiracy between the three brothers to defraud plaintiff of her rights and interest therein. The same is true relative to the assignment to Anthony.

We understand that since the assignment of the homestead contract to Charles he has paid the balance due thereon, and to wit, April 21, 1924, received a deed of the same from the owners, and that he still has the record title.     By the terms of the decree, plaintiff is given, as her own separate property, all the rights therein of her husband on the date of filing the original bill of complaint, June 27, 1921.     But since that date the defendant Charles Hass having paid the balance due on the contract, such payment and any additional moneys he has put into the improvement of the property he is entitled to have repaid him, with interest at the rate of six per cent. per annum; such amount to be fixed upon the settlement of the decree or by reference to the circuit judge.     And if plaintiff is to be permitted to now redeem her interest in the property by payment of such sums to Charles she should be limited as to time in so doing.     She will be given 90 days from the date of the determination of the amount due.     Failing to redeem within that period, she will be barred from any further right, title or interest in the property.

Modified in this respect, the decree will be affirmed. No costs.

SHARPE, C. J., and BIRD, STEERE, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.